## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MERCY GENERAL HOSPITAL, et al.,      ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.      ) | Civil Action No. 21-1397 (RBW) |
| ) | |
| XAVIER BECERRA, in his official ) | |
| capacity as Secretary of the Department of ) | |
| Health and Human Services, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The plaintiffs, seventy-five acute care hospitals located in California, bring this civil action against the defendant, Xavier Becerra, in his official capacity as the Secretary (the "Secretary") of the United States Department of Health and Human Services (the "Department"), challenging (1) the Secretary's Provider Reimbursement Review Board's April 15, 2021 Denial of Request for Expedited Judicial Review pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395oo(f)(1), see First Amended Complaint ("Am. Compl.") ¶¶ 1–3, 166–83, ECF No. 7, and (2) the lawfulness of regulatory rule 42 C.F.R. § 413.89(e)(2)(iii) (the "2020 final rule"), see id. ¶¶ 190–203, pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), see id. ¶¶ 185, 205.  Currently pending before the Court is the Defendant's Motion to Dismiss ("Def.'s Mot." or the "Secretary's motion to dismiss"), ECF No. 25.  Upon careful consideration

of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the Secretary's motion to dismiss.

## I.      BACKGROUND

The Court previously described much of the background relevant to this case in an opinion resolving the plaintiffs' initial claim seeking judicial review of a decision by the Secretary in a prior case, see Mercy Gen. Hosp. v. Azar, 344 F. Supp. 3d 321, 326–33 (D.D.C. 2018) ("Mercy I"), and in an opinion resolving a subsequent motion that sought reconsideration of the Court's prior ruling, see Mercy Gen. Hosp. v. Azar, 410 F. Supp. 3d 63, 68–70 (D.D.C. 2019) ("Mercy II"), and therefore will not reiterate that information again here.  The Court will, however, briefly discuss the statutory, regulatory, and factual background of this case as related to the issues the Court must now consider in resolving the Secretary's motion to dismiss.

### A.      Statutory and Regulatory Background

#### 1.  The Medicare Program

The Medicare program, established in 1965 as Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395lll (2012) (the "Medicare Act"), "is a federally funded medical insurance program for the elderly and disabled," Fischer v. United States, 529 U.S. 667, 671 (2000) (internal citation omitted).  Part A of the Medicare Act provides insurance coverage to eligible beneficiaries for the cost of inpatient hospital care, home health care, and hospice services, see 42 U.S.C. § 1395c, and Part B provides supplemental coverage for outpatient hospital care and other types of care not covered by Part A, see id. § 1395k.  As the Court previously explained, see Mercy I, 344 F. Supp. 3d at 328, if Medicare patients fail to pay the

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem."), ECF No. 25-1; (2) the Plaintiffs' Opposition to Motion to Dismiss ("Pls.' Opp'n"), ECF No. 26; and (3) the Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Def.'s Reply"), ECF No. 29.

deductible and coinsurance payments that they owe to providers, the providers may seek reimbursement from the Centers for Medicare & Medicaid Services ("CMS") for these unpaid amounts, which are known as "bad debts," see 42 C.F.R. § 413.89(e).  CMS administers the Medicare program on behalf of the Secretary, see Ark. Dep't of Health & Hum. Servs. v. Ahlborn, 547 U.S. 268, 275 (2006), "through contracts with [M]edicare administrative contractors," 42 U.S.C. §§ 1395h(a), 1395u(a), which are known as "fiscal intermediar[ies,]" 42 U.S.C. § 1395kk-1(e)(2)(B).  The fiscal intermediaries determine the amount of reimbursement for bad debts providers will receive.  See 42 U.S.C. § 1395kk-1(a)(4).

A provider who "is dissatisfied with a final determination of . . . its fiscal intermediary[,]" 42 U.S.C. § 1395oo(a)(1)(A)(i), "may obtain a hearing . . . by [the] Provider Reimbursement Review Board [(the "Board")][,]" id. § 1395oo(a).  That provider "may file a request for a determination by the Board of its authority to decide [a] question of law or regulations relevant to the matters in controversy[.]"  Id. § 1395oo(f)(1).  The Board "shall render such determination in writing within thirty days" and "the determination shall be considered a final decision and not subject to review by the Secretary."  Id.  If "the Board determines . . . that it is without authority to decide the question," the provider may "obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy[.]"  Id.  If the Board fails to render a determination as to whether it has authority to decide the question presented within thirty days, "the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing."  Id.  Moreover, providers "shall have the right to obtain judicial review of any final decision of the Board[.]"  Id.

Additionally, the Department has established a process by which a provider entitled to judicial review under 42 U.S.C. § 1395oo(f)(1) may obtain "expedited judicial review."  See 42 C.F.R. § 405.1842.  The Board

> must grant [a request for expedited judicial review] for a legal question relevant to a specific matter at issue in a Board appeal if the Board determines the following conditions are satisfied:
>
> (i) The Board has jurisdiction to conduct a hearing on the specific matter at issue . . . [but] [2]
>
> (ii) The Board lacks the authority to decide a specific legal question relevant to the specific matter at issue because the legal question is a challenge either to the constitutionality of a provision of a statute, or to the substantive or procedural validity of a regulation or CMS Ruling. [3]

Id. § 405.1842(f)(1).  However, the Board must deny a request for expedited judicial review if any of the following apply:

> (i) The Board determines that it does not have jurisdiction to conduct a hearing on the specific matter at issue . . . [,]
>
> (ii) The Board determines it has the authority to decide a specific legal question relevant to the specific matter at issue because the legal question is neither a challenge to the constitutionality of a provision of a statute, nor a challenge to the substantive or procedural validity of a regulation or CMS Ruling[, or]
>
> (iii) The Board does not have sufficient information to determine whether the criteria specified in paragraph (f)(1)(i) or (f)(1)(ii) of this section are met.

Id. § 405.1842(f)(2).

The Department has also clarified that a "Board decision is final" only when it is "one of the Board decisions specified in § 405.1875(a)(2)(i) through (a)(2)(iii)" or is "deemed to be final by the [CMS] Administrator under § 405.1875(a)(2)(iv)[,]" and it is "not reversed, affirmed,

---

[2] The Board has jurisdiction over a claim when a provider "is dissatisfied with a final determination" of their fiscal intermediary or the Secretary; "the amount in controversy is $10,000 or more[;]" and the "provider files a request for a hearing within 180 days after notice of the [ ] final determination[.]"  42 U.S.C. § 1395oo(a).

[3] The Board "must comply with all the provisions of Title XVIII of the [Medicare] Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the [CMS] Administrator[,]" 42 C.F.R. § 405.1867, and therefore, does not have the authority to determine the validity of such laws and regulations as they apply to matters over which they have jurisdiction, see 42 C.F.R. § 405.1842(f)(1)(ii).

modified, or remanded by the [CMS] Administrator[.]" Id. § 405.1877(a)(3).  The Board

decisions specified in 42 C.F.R. § 405.1875(a)(2) are:

(i)     A Board hearing decision . . . [,]
(ii)    A Board dismissal decision . . . [,]
(iii)   A Board [expedited judicial review] decision, but only the question of whether there is Board jurisdiction over a specific matter at issue in the decision; the [CMS] Administrator may not review the Board's determination in a decision of its authority to decide a legal question relevant to the matter at issue . . . [, or]
(iv)    Any other Board decision or action deemed to be final by the [CMS] Administrator.

42 C.F.R. § 405.1875(a)(2).  Any Board decision that is final is "subject to judicial review under

[42 U.S.C. § 1395oo(f).]" Id. § 405.1877(a)(3).

## 2. The 2020 Final Rule

In September 2020, the Secretary issued new regulations governing Medicare bad debts,

which apply retroactively.  See 42 C.F.R. § 413.89.  To receive reimbursement under these new

regulations for a Medicare bad debt associated with indigent dual eligible Medicare

beneficiaries,[4] a provider "[m]ust submit a bill to its Medicaid/Title XIX agency" and "[m]ust

submit the Medicaid remittance advice received from the State to its Medicare contractor."

Id. § 413.89(e)(2)(iii).  However, a provider may submit alternative documentation when

"through no fault of the provider, a provider does not receive a Medicaid remittance advice

because the State does not permit a Medicare provider's Medicaid enrollment for the purposes of

processing a beneficiary's claim, or because the State does not generate a Medicaid remittance

advice[.]" Id.

---

[4] Dual eligible Medicare beneficiaries are patients that "are eligible for both Medicare and Medicaid." Grossmont Hosp. Corp. v. Burwell, 797 F.3d 1079, 1081 (D.C. Cir. 2015).  As the Court previously explained, "[a]t issue in this case are the plaintiffs' claims for Medicare reimbursement of unpaid deductible and coinsurance amounts associated with dual eligible patients, incurred between the fiscal years ending in October 1995 and December 2004." Mercy I, 344 F. Supp. 3d at 331.

B.      **Factual Background**

The plaintiffs are acute care hospitals located in California that provide services to

patients entitled to benefits under both the Medicare and Medicaid programs.  See Am. Compl.

¶¶ 4–81.  The plaintiffs previously brought suit, "involv[ing] largely the same [seventy-five]

[p]laintiff providers[,]" Def.'s Mem. at 6, in this Court seeking review of the Secretary's decision

denying their claims for reimbursement for the Medicare bad debts of dual eligible patients

incurred between the years 1995 and 2004.  See Mercy I, 344 F. Supp. 3d at 331.  Specifically,

the plaintiffs challenged the Secretary's "must-bill" policy that required providers to bill the

State and seek remittance advice before they could receive any reimbursement through

Medicare.[5]  See id.

The Court, in its decision on September 29, 2018, partially granted the plaintiffs' motion

for summary judgment,

> conclud[ing] that the [CMS Administrator's] finding that the Secretary's
> remittance advice requirement predated the Moratorium [was] not supported by
> substantial evidence, and thus, based on the administrative record before the
> Secretary, application of such a requirement to the plaintiffs' claims violated the
> Moratorium.  Accordingly, the [CMS Administrator] erred when he concluded
> that the remittance advice requirement did not violate the Moratorium.  Therefore,
> the Court [could not] affirm the Secretary's denial of the plaintiffs' claims on the
> basis that the plaintiffs failed to provide remittance advices to support their
> claims.  Moreover, because the [CMS Administrator] did not find that the
> plaintiffs failed to bill the state for all of the claims at issue, the Court [could not]
> affirm the [CMS Administrator's] decision denying all of the plaintiffs' claims on
> the alternative ground that the plaintiffs failed to satisfy any billing requirement.

---

[5] At issue in Mercy I was whether the Secretary's policies were in place prior to August 1, 1987, and therefore did
not violate the so-called Bad Debt Moratorium.  See Mercy I, 344 F. Supp. 3d at 329.  In 1987, Congress passed the
Bad Debt Moratorium legislation that provided: "[i]n making payments to hospitals under [the Medicare program],
the Secretary . . . shall not make any change in the policy in effect on August 1, 1987, with respect to payment under
[the Medicare program][.]"  Omnibus Budget Reconciliation Act (OBRA) of 1987, Pub. L. No. 100–203, § 4008(c),
101 Stat. 1330, 1330–55 (codified at 42 U.S.C. § 1395f note).  The effect of the legislation was to "'freeze' the
Secretary's Medicare bad debt reimbursement policies."  Mountain States Health All. v. Burwell, 128 F. Supp. 3d
195, 200 (D.D.C. 2015).  The Moratorium remained in place until 2012, see Middle Class Tax Relief and Job
Creation Act of 2012, Pub. L. No. 112–96, tit. III, § 3201(d), 126 Stat. 156, 192–93 (codified at 42 U.S.C. § 1395f
note), therefore covering the period from 1995 to 2004 that was at issue.  See Mercy I, 344 F. Supp. 3d at 331.

Id. at 354.  The plaintiffs then moved for reconsideration, and in Mercy II, the Court remanded

the case to the Department "for the [CMS] Administrator to provide further explanation of the

reasons for finding that the plaintiffs' documentation was not contemporaneous as required by

[the Provider Reimbursement Manual, Part II] § 1102.3L" and "for further explanation of the

[CMS] Administrator's conclusion that the [Electronic Data Systems ("EDS") Corporation]

Reports fail to satisfy the contemporaneous documentation requirement."[6]  410 F. Supp. 3d at

83.

The CMS Administrator subsequently remanded the matter to the Board.  See Am.

Compl. ¶ 156.  In a Notice of Reopening, dated February 16, 2021, the Board requested that the

parties brief the Board on "[w]hether or not the [plaintiffs] billed the state for the claims at

issue[,]" "[w]hether or not the [plaintiffs'] documentation was 'contemporaneous[,]'" and

whether or not the alternative documents previously supplied by the plaintiffs "fail[ed] to satisfy

the 'contemporaneous' documentation requirement."  Am. Compl., Exhibit ("Ex.") B (Notice of

Reopening (Feb. 16, 2021)) at 16, ECF No 7-4.  Additionally, the Board requested that the

parties brief "the extent to which the [2020 final rule] is relevant and should be taken into

consideration by the Board when adjudicating these cases."  Id.

On March 18, 2021, the plaintiffs requested expedited judicial review pursuant to

42 U.S.C. § 1395oo(f)(1).  See Am. Compl. ¶¶ 169–70.  The plaintiffs asserted that "the Board

has jurisdiction over their appeal but lacks the authority to decide the legal question of their

---

[6] The plaintiffs had contracted with the EDS Corporation, a contractor used to process crossover claims, "to produce
reports to submit . . . [to the intermediary] as [ ] alternative documentation to the State remittance advices (the 'EDS
reports')."  Mercy I, 344 F. Supp. 3d at 331 (internal quotation marks omitted) (alterations in original).  The CMS
Administrator had determined that the EDS Reports were not valid documents, and rejected "the [plaintiffs']
contentions that the EDS reports qualif[ied] as remittance advices . . . [because] the EDS reports [we]re not
contemporaneously generated State documents[ ] . . . [and] were not validated, certified[,] or adopted as State
documents."  Id. at 332 (internal quotation marks omitted) (alterations in original).

challenge to the [2020 final rule]." Id. ¶ 170.  On April 15, 2021, within thirty days of the

plaintiffs' request for expedited judicial review, the Board denied the plaintiffs' request, stating

that "the Board has not yet received the information needed to decide the factual and legal issues

and complete the record as required by the District Court's remand."  Am. Compl., Ex. C (Denial

of Request for Expedited Judicial Review (April 15, 2021) ("Denial Letter")) at 7, ECF No. 7-5.

The Board specifically noted, in terms of the information it still needed, that it "has not yet

begun considering the parties['] comments regarding the relevance of the [2020 final

rule] . . . which may or may not eliminate the need for [expedited judicial review] when the

requisite factual findings are made[,] and the issues are reviewed in their totality."  Id.

## C.  Procedural History

On June 14, 2021, the plaintiffs filed this action seeking judicial review of the Board's

decision denying the plaintiffs' request for expedited judicial review.  See Am. Compl. at 1.  On

December 17, 2021, the Secretary filed his motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(1).  See Def.'s Mot. at 1.  The plaintiffs subsequently filed their opposition on

January 18, 2022, see Pls.' Opp'n at 1, and the Secretary filed his reply on March 1, 2022, see

Def.'s Reply at 1.  Furthermore, on October 10, 2022, the plaintiffs filed a notice regarding

supplemental authority, namely cases "which were decided subsequent to the motion to dismiss

briefing in this case and are relevant to the ripeness issue."  Notice of Supplemental Authority in

Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pls.' Notice") at 1, ECF

No. 31.[7]

---

[7] Because the Court ultimately decides the issues presented in the Secretary's motion to dismiss on grounds other than ripeness, see infra Sections III.A–B, it does not reach the issue of ripeness, see infra n.8.  Therefore, the plaintiffs' notice of supplemental authority, which only bears on the ripeness issue raised in the defendant's motion to dismiss, see generally Pls.' Notice, does not factor into the Court's analysis.

## II.      STANDARD OF REVIEW

"Federal [district] courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life

Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Thus, the Court is obligated to dismiss a claim if it

"lack[s] . . . subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A motion for dismissal

under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's

jurisdiction.'"  Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (quoting Haase v.

Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Because "[i]t is to be presumed that a cause lies

outside [a federal court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears

the burden of establishing by a preponderance of the evidence that the Court has subject-matter

jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In assessing a Rule 12(b)(1) motion, the Court must "assume the truth of all material

factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff

the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v.

Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394

F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the

complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6)

motion for failure to state a claim."  Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185

F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted).  Moreover, the Court

"need not limit itself to the allegations of the complaint," id. at 14; rather, the "[C]ourt may

consider such materials outside the pleadings as it deems appropriate to resolve the question [of]

whether it has jurisdiction [over] the case," Scolaro v. D.C. Bd. of Elections & Ethics, 104 F.

Supp. 2d 18, 22 (D.D.C. 2000); see Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253

9

(D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction[.]").

## III.    ANALYSIS

The Secretary argues that this case should be dismissed on jurisdictional grounds for the following reasons: (1) 42 U.S.C. § 1395oo(f)(1) of the Medicare Act does not confer subject-matter jurisdiction because the "[p]laintiffs have not received a final decision of the Secretary on any of their claims in this action[,]" Def.'s Mem. at 11; and (2) there is no jurisdiction under the federal mandamus statute "because the Secretary does not owe [the p]laintiffs a clear, nondiscretionary duty[,]" id. at 2, and the "appeals process provides an alternative means of securing relief[,]" id.[8]  In response, the plaintiffs argue that: (1) the Board, through its Denial Letter, did not adequately issue a determination of its authority to decide the relevant questions, thus giving the plaintiffs the right to bring this action under § 1395oo(f), see Pls.' Opp'n at 1–2 ("It is well-established that courts have jurisdiction to review [expedited judicial review] determinations, which are final agency action."); and (2) the Court has federal mandamus jurisdiction pursuant to 28 U.S.C. § 1361 because the Secretary "is not fulfilling the Court's directive on remand but rather has refused to provide additional explanation pursuant to the Court's remand order[,]" id. at 21.  The Court will proceed with its analysis by first determining

---

[8] The defendant also argues that the plaintiffs' claims should be dismissed due to lack of ripeness given that the plaintiffs' "claims on remand from this Court are still pending before the [Board]." Def.'s Mem. at 2.  However, because the Court concludes on other grounds that it does not have subject matter jurisdiction over the plaintiffs' claims, see infra Sections III.A–B, it need not reach the issue of ripeness.  See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."); Passut v. Cardona, 540 F. Supp. 3d 27, 35 n.6 (D.D.C. 2021) (Walton, J.) (concluding that, because it lacked subject matter jurisdiction based upon one of the defendants' Rule 12(b)(1) arguments, that the Court "need not address the defendants' other [Rule 12(b)(1)] argument[]").

whether it has subject-matter jurisdiction pursuant to 42 U.S.C. § 1395oo(f) and, if not, whether

exercising mandamus jurisdiction is appropriate.

### A.      Whether the Court has Subject-Matter Jurisdiction Pursuant to 42 U.S.C. § 1395oo(f)

The plaintiffs argue that the Court has subject-matter jurisdiction pursuant to 42 U.S.C.

§ 1395oo(f) for two reasons: (1) the Board failed to issue a "determination [ ] of its authority to

decide the question of law or regulations relevant to the matters in controversy," 42 U.S.C.

§ 1395oo(f), and therefore the "Board's [thirty]-day period to issue such determination has

expired[,]" Pls.' Opp'n at 13, and (2) "it is quite well-established that [expedited judicial review]

determinations are final, appealable decisions[,]" id. at 17.  The Court will proceed by first

addressing whether the Board failed to make a determination of its authority to decide the

question of law or regulation, before addressing whether the Board's rejection of expedited

judicial review constitutes a "final decision" under 42 U.S.C. § 1395oo(f).

### 1.      Whether the Board Failed to Make a Determination of its Authority to Decide the Question of Law or Regulation

The Court first addresses the plaintiffs' argument that the Board "did not make the

requisite determination within thirty days" as required by the statute.  Id. at 12.  At issue

specifically is whether the Board made a sufficient determination of whether it had jurisdiction

or authority over the plaintiffs' question of law or regulation in its Denial Letter.  Id. at 13–14.

In its letter, the Board denied the request for expedited judicial review because it "ha[d] not yet

received the information needed to decide the factual and legal issues and complete the record as

required by the [this] Court's remand[,]" and "ha[d] not yet begun considering the parties[']

comments regarding the relevance of the [2020 final rule][,]" which "may or may not eliminate

the need for [expedited judicial review] when the requisite factual findings are made and the

issues are reviewed in their totality."  Am. Compl., Ex. C (Denial Letter) at 7.  The Secretary

asserts that "the Board relied on the absence of sufficient documentation criterion under § 405.1842(f)(2)(iii)" as the basis for rejecting the request for expedited judicial review.  Def.'s Reply at 6.[9]  The plaintiffs, on the other hand, claim that, because the letter does not "identify what information it believes it lacks but needs in order to determine whether it has jurisdiction or authority[,]" the letter "plainly does not" meet the criteria for rejection set out in 42 C.F.R. § 405.1842(f)(2)(iii).  Pls.' Opp'n at 14.

Before the Court can address whether the Denial Letter entitled the plaintiffs to expedited judicial review under 42 C.F.R. § 405.1842(f)(2), the Court must first address "whether Congress has directly spoken to the precise question at issue[,]" Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984), i.e., whether the Board failed to make a final determination of its authority to decide the question of law or regulation under these circumstances.  "If the intent of Congress is clear, that is the end of the matter; for the [C]ourt, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. When "the plain language of [a] statute is clear, [ ] court[s] generally will not inquire further into its meaning[.]"  Qi-Zhuo v. Meissner, 70 F.3d 136, 140 (D.C. Cir. 1995).  To determine whether a statute is ambiguous, the Court must "look to the structure and language of the statute as a whole."  Nat'l R.R. Passenger Corp. v. Bos. & Maine Corp., 503 U.S. 407, 417 (1992).

The statute here, see 42 U.S.C. § 1395oo(f)(1), provides in relevant part that a "provider may file a request for a determination by the Board of its authority to decide the question of law

---

[9] The plaintiffs, citing to Methodist Hospitals of Memphis v. Sullivan, 799 F. Supp. 1210 (D.D.C. 1992), claim that this Court "already has rejected a nearly identical argument by the Secretary."  Pls.' Opp'n at 1.  Indeed, in that case, the Court held that the Board "did not determine that it had authority to decide the validity of the Secretary's reaudit regulation" when it denied expedited judicial review because of factual issues that had not yet been decided.  799 F. Supp. at 1215.  Therefore, the Court held that the Board "failed to make a timely determination of whether it had or did not have jurisdiction over the merits of the dispute as required by 42 U.S.C. § 1395oo(f)(1)."  Id. at 1216. However, this Court finds that Methodist Hospitals of Memphis is distinguishable from this case, as the regulation challenged in Methodist Hospitals of Memphis had already been applied to the plaintiffs' case, unlike the yet to be applied 2020 final rule in this case.

or regulations relevant to the matters in controversy[,]" id., that the Board "shall render such determination in writing within thirty days[,]" id., and if it fails to do so, "the provider may bring a civil action," id.  The Board "must make a determination of whether it has jurisdiction to decide the issue presented[,]" the issuance of which is "mandatory, not discretionary[;]" and "if it does not make such a determination, 42 U.S.C. § 1395oo(f)(1) permits the provider to seek direct judicial review." Methodist Hosps. of Memphis v. Sullivan, 799 F. Supp. 1210, 1215–16 (D.D.C. 1992), rev'd on other grounds sub nom., Adm'rs of Tulane Educ. Fund v. Shalala, 987 F.2d 790 (D.C. Cir. 1993); see also Clarian Health W., LLC v. Hargan, 878 F.3d 346, 354 (D.C. Cir. 2017) ("Either the Board granted expedited review over the question presented, or it failed to decide [the plaintiff's] request for expedited judicial review of the question within thirty days. In either event, [the plaintiff] had a right to seek review in the District Court[.]").

Regarding the "structure . . . of the statute as a whole[,]" Nat'l R.R. Passenger Corp., 503 U.S. at 417, the impact of 42 U.S.C. § 1395oo(f)(1) is to prevent providers from having to pursue "a time-consuming and irrelevant administrative review merely to have the right to bring suit in a U.S. District Court." H.R. Rep. No. 96–1167, at 394 (1980), 1980 U.S.C.C.A.N. 5526, 5757. Here, that review would not be irrelevant, because the issue would become moot if the Board determines the 2020 final rule does not apply, and there would therefore be no need for the Court to intervene. As to the "language of the statute as a whole[,]" Nat'l R.R. Passenger Corp., 503 U.S. at 417, the term "relevant" has different meanings in different contexts. See, e.g., Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("Generally speaking, 'relevance' for discovery purposes is broadly construed."); Jewish War Veterans of the U.S. of Am., Inc. v. Gates, 506 F. Supp. 2d 30, 42 (D.D.C. 2007) ("The term 'relevant' [ ] has a different meaning—and a broader scope—under

Fed. R. Civ. P. 26(b) than it does under Rule 401 of the Federal Rules of Evidence."); Kisor v. McDonough, 995 F.3d 1316, 1326–25 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 756, (2022) (rejecting the plaintiff's argument that "the term 'relevant' should be construed broadly[,]" in favor of requiring that "relevant" records must directly "pertain to" the matter at issue).  The Court therefore finds the phrase "relevant to" to be sufficiently ambiguous so as to open 42 U.S.C. § 1395oo(f)(1) to interpretation.  See Nat'l R.R. Passenger Corp., 503 U.S. at 408 ("The existence of alternative [ ] definitions for [a term] indicates that the statute is open to interpretation.").

Prior cases addressing whether the Board failed to make a timely determination have done so in the context of challenges to laws and regulations that had already been concretely applied to the plaintiffs in those cases prior to the administrative review.  See Methodist Hosps. of Memphis, 799 F. Supp. at 1212 (involving a challenge to a reimbursement regulation that had already been applied to the plaintiffs' case, in that each plaintiff had seen their reimbursement amounts reduced after a reaudit applying the new regulations at issue); Clarian Health, 878 F.3d at 349–352 (involving a challenge to a 2010 policy governing a reconciliation process, under which the plaintiff was required to pay $2.4 million).  Here, the plaintiffs sought expedited judicial review "to decide the legal question" of "the validity of the [2020 final rule]'s requirement that a provider must bill the state even if it has documentation alternative to the remittance advice[.]"  Am. Compl., Ex. A (Request for Expedited Judicial Review for Mercy General Hospital et al. (Mar. 18, 2021) ("Request for Review")) at 2.  And, the relevance of the 2020 final rule to the Court's remand to the Board is still very much an open question, see Am. Compl., Ex. B (Notice of Reopening) at 16, and the Board notes in its Denial Letter that it has "not yet begun considering the parties['] comments regarding the relevance of the [2020 final

rule][.]"  Am. Compl., Ex. C (Denial Letter) at 7.  The statute, see 42 U.S.C. § 1395oo(f)(1),

explicitly states that a provider may request a determination of authority from the Board "to

decide the question of law or regulations relevant to the matters in controversy," id. (emphasis

added).   The statute is therefore ambiguous as to the determination of whether the 2020 final

rule is relevant to the Court's remand to the Board in this case.

When a statute is ambiguous and Congress's intent is unclear, the Court must "defer to

the agency's interpretation as long as it is 'based on a permissible construction of the statute.'"

Bluewater Network v. EPA, 372 F.3d 404, 410 (D.C. Cir. 2004) (quoting Chevron, 467 U.S. at

842–43).  However, "[t]he [C]ourt need not conclude that the agency construction was the only

one it permissibly could have adopted to uphold the construction, or even the reading the [C]ourt

would have reached if the question initially had arisen in a judicial proceeding."  Chevron, 467

U.S. at 843 n.11.  Regarding the legislative record, Congress's stated intent in establishing

expedited judicial review was to create a system that did not "delay the resolution of

controversies for extended periods of time and [ ] require providers to pursue a time-consuming

and irrelevant administrative review merely to have the right to bring suit in a U.S. District

Court."  See H.R. Rep. No. 96–1167, at 394 (1980), 1980 U.S.C.C.A.N. 5526, 5757.  Thus, the

Board must acknowledge, through a determination of its authority, when it "lack[s] the

jurisdiction to decide whether the regulation [is] invalid."  Methodist Hosps. of Memphis, 799 F.

Supp. at 1216.  The review in question here cannot be considered "irrelevant," as the question of

whether the 2020 final rule even applies will possibly determine whether there is a question of

law or regulation that even needs to be addressed by the Court.  Therefore, a Board hearing is not

an event that Congress sought to avoid by granting expedited judicial review under certain

circumstances.  See H.R. Rep. No. 96–1167, at 394.

In its Denial Letter, the Board references regulations, see Am. Compl., Ex. C (Denial Letter) at 6–7, which state that the Board "must deny [expedited judicial review][,]" 42 C.F.R. § 405.1842(f)(2), when the Board "does not have sufficient information to determine whether" it has jurisdiction or authority, id.  Here, the missing information is directly relevant to the challenged regulation, information which "may or may not eliminate the need for [expedited judicial review] when the requisite factual findings are made and the issues are reviewed in their totality."  Am. Compl., Ex. C (Denial Letter) at 7.  Because the statute only requires the Board to make a full determination of its authority on a question "relevant to the matters in controversy[,]" 42 U.S.C. § 1395oo(f)(1), it is permissible that the Board deny expedited judicial review until such time as it can be determined whether the question is even relevant.  Accordingly, the Court concludes that the Board's Denial Letter was adequate, and the lack of a determination of the Board's authority to answer the question of law or regulations does not, under these unique circumstances, grant this Court subject-matter jurisdiction under 42 U.S.C. § 1395oo(f)(1).  Therefore, the Court will proceed to its analysis regarding whether the rejection of expedited judicial review constitutes a reviewable final decision.

## 2. Whether the Board's Rejection of Expedited Judicial Review Constitutes a "Final Decision"

In his motion, the Secretary argues that the plaintiffs "have not received a final decision of the Secretary on any of their claims in this action[,]" Def.'s Mem. at 11, because the administrative appeals have not been exhausted and accordingly "the Board's denial of expedited judicial review [ ] is only an interlocutory ruling[,]" id. at 12.  The plaintiffs respond that "it is quite well-established that [expedited judicial review] determinations are final, appealable decisions."  Pls.' Opp'n at 17.  The plaintiffs also note that "'[a] Board [expedited judicial review] decision'" is included "[a]mong the final Board decisions listed in [42 C.F.R.]

§ 405.1875(a)(2)." Id. at 18 (citing 42 C.F.R. § 405.1875(a)(2)(iii)).  Further, the plaintiffs claim

that within the meaning of the statute, the list of "final and reviewable decisions must include the

failure of the Board to make the requisite no-authority decision within thirty days." Id. at 18–19.

The Secretary counters that "the Board's denial of the plaintiffs' request for expedited judicial

review of the 2020 final rule is clearly not a final decision; rather, the Board's denial was an

interlocutory ruling . . . before the potential applicability of the 2020 final rule could be

ascertained." Def.'s Reply at 1.  The Secretary further argues that the "regulation provides for

review of '[a] Board [expedited judicial review] decision, but only the question of whether there

is Board jurisdiction over a specific matter at issue in the decision.'" Id. at 4 (alterations in

original) (emphasis omitted) (quoting 42 C.F.R. § 405.1875(a)(2)(iii)).  Because in this case "the

Board did not rule that it lacked jurisdiction[,]" the Secretary argues that "the Board's denial of

expedited judicial review is not a final decision," and thus the Court lacks "subject matter

jurisdiction under 42 U.S.C. § 1395oo(f)(1)." Id. at 4–5.[10]

Before determining whether 42 C.F.R. § 405.1875(a)(2) applies, the Court must first

consider whether 42 U.S.C. § 1395oo(f)(1) addresses the matter.  See Chevron, 467 U.S. at 842.

The statute plainly states that "[p]roviders shall have the right to obtain judicial review of any

---

[10] In response to the Secretary's argument that "42 U.S.C. § 1395oo(f)(1), is inapplicable because [the p]laintiffs have failed to exhaust administrative appeals remedies on their claims in this action[,]" Def.'s Mem. at 2, the plaintiffs counter that in Bethesda Hospital Association v. Bowen, the Supreme Court rejected a similar argument raised by the Secretary.  485 U.S. 399, 404 (1988).  There, the Supreme Court noted that the "petitioners stand on different ground than do providers who bypass a clearly prescribed exhaustion requirement[,]" id. at 404–05, referencing "an exhaustion requirement that, sensibly, would compel providers to present those claims to the intermediary that the intermediary actually had the power to address[,]" Banner Heart Hosp. v. Burwell, 201 F. Supp. 3d 131, 141 (D.D.C. 2016).  Thus, the plaintiffs contend there can be no exhaustion requirement when "neither the Board nor the intermediary has the authority to address challenges to the validity of a regulation." Id. When there is a legal question relevant to the matter at hand that is beyond the Board's authority, "[i]t is this determination of the Board, or alternatively the Board's failure to act, that triggers the right of judicial review." Bethesda, 485 U.S. at 406.  However, because the Court ultimately finds that it may not exercise subject-matter jurisdiction over this case pursuant to 42 U.S.C. § 1395oo(f)(1) because there has been no relevant final decision issued, it need not reach the issue of whether the plaintiffs are required to exhaust administrative appeals before seeking judicial review.

final decision of the Board[.]"  42 U.S.C. § 1395oo(f)(1).  While the statute does provide a list of

what is or is not a final decision, it also states that providers "may file a request for a

determination by the Board of its authority to decide the question of law or regulations relevant

to the matters in controversy" and that "the determination shall be considered a <u>final decision</u>

and not subject to review by the Secretary."  <u>Id.</u> (emphasis added).  The plain reading of the

statute indicates that "Congress intended for providers to have access to judicial review any time

that the [Board] makes a no authority determination, so long as the provider timely commences a

civil proceeding."  <u>Affinity Healthcare Servs., Inc. v. Sebelius</u>, 746 F. Supp. 2d 106, 115 (D.D.C.

2010); <u>see also</u> <u>Autumn Journey Hospice, Inc. v. Sebelius</u>, 753 F. Supp. 2d 135, 141 (D.D.C.

2010) ("Congress intended to establish [ ] a framework under which providers have recourse to

immediate judicial review whenever the [Board] makes a no authority determination.") (internal

quotation marks omitted); <u>Allina Health Servs. v. Burwell</u>, 141 F. Supp. 3d 17, 21 (D.D.C. 2015)

("[T]he statute is clear that the Board's authority determination is a final decision and therefore

subject to judicial review.").

      However, as noted above, <u>see</u> <u>supra</u> Section III.A.1, 42 U.S.C. § 1395oo(f)(1) expressly

applies to "question[s] of law or regulations <u>relevant to</u> the matters in controversy[.]"  42 U.S.C.

§ 1395oo(f)(1) (emphasis added).  When courts have previously held that an expedited judicial

review determination is a final decision, it has typically been in the context of a challenge to a

law or regulation that was plainly relevant to the matter at hand because it had been concretely

applied to the plaintiffs in some manner prior to the administrative review process.  <u>See, e.g.</u>,

<u>Autumn Journey Hospice</u>, 753 F. Supp. 2d at 138 (involving a challenge to the legitimacy of a

Medicare hospice care reimbursement cap that had been applied to the plaintiffs); <u>Allina Health</u>

<u>Servs.</u>, 141 F. Supp. 3d at 19 (involving a challenge to calculation methods used to determine the

plaintiffs' payment determinations under Medicare); Affinity Healthcare Servs., 46 F. Supp. 2d at 109 (involving a group of plaintiffs challenging the regulations that had resulted in the Department issuing repayment demands).  Here, however, the relevance of the 2020 final rule is still in question, as the rule has not yet been applied to the plaintiffs.  See Pls.' Opp'n at 22 (acknowledging that the "new bad debt regulations have not yet been applied to the [plaintiffs'] claims at issue"); see also Am. Compl., Ex. C (Denial Letter) at 7 ("[T]he Board has not yet begun considering the parties comments regarding the relevance of the [2020 final rule], an intervening event, which may or may not eliminate the need for expedited judicial review when the requisite factual findings are made and the issues are reviewed in their totality[.]").  It therefore cannot be said that the determination made by the Board was one of "its authority to decide the question of law or regulations relevant to the matters in controversy[,]" see 42 U.S.C. § 1395oo(f)(1) (emphasis added), as the relevance of the 2020 final rule is still undetermined. Therefore, the final decision requirement found in the statute does not unambiguously apply in this case.  Further, as previously discussed, the Congressional record does not provide guidance in cases where the question of law or regulation is not clearly relevant to the facts of the case. See supra Section III.A.1.  Because the statute and Congressional intent are ambiguous, Chevron deference to the agency's regulations is warranted.  See Bluewater Network, 372 F.3d at 410.

Under the relevant regulatory provision, "[a] Board decision is final and subject to judicial review . . . only if the decision" meets certain listed criteria.  42 C.F.R. § 405.1877(a)(3) (emphasis added).  Relevant to this case, the provision incorporates by reference an enumerated set of reviewable Board decisions found in § 405.1875(a)(2) that qualify as final decisions.  See id.  That list includes "[a] Board [expedited judicial review] decision, but only the question of whether there is Board jurisdiction over a specific matter at issue in the decision[.]"

Id. § 405.1875(a)(2)(iii) (emphasis added).  Specifically, "the [CMS] Administrator may not review the Board's determination in a decision of its authority to decide a legal question relevant to the matter at issue."  Id.  Here, "whether there is Board jurisdiction over [this] specific matter[,]" id., is not in question, see Am. Compl., Ex. A (Request for Review) at 2; rather, the question of "its authority to decide a legal question relevant to the matter[,]" 42 C.F.R. § 405.1877(a)(2)(iii) (emphasis added), is at issue, see Am. Compl., Ex. A (Request for Review) at 2–3.  This latter determination is excluded from the list of final decisions and because a decision is only final if it meets the criteria set by § 405.1877(a)(3), and a determination of authority to decide a legal question does not satisfy those criteria, the decision in this case does not constitute a final decision.

Because the denial of expedited judicial review in this case was not a "final decision" based on either the meaning of the statute or applicable regulatory provisions, it is best categorized, as the Secretary urges, as an "interlocutory" decision.  See Def.'s Reply at 1.  The legitimacy of expedited judicial review cannot be fully judged "before the potential applicability of the 2020 final rule [can] be ascertained."  Id.  Thus, while under normal circumstances there may be no exhaustion requirement to obtain expedited judicial review of a challenge to a law or regulation, see Bethesda Hosp. Ass'n v. Bowen, 485 U.S. 399, 404–05 (1988) (holding that there is no exhaustion requirement when any further administrative proceeding would be "futile"); Banner Heart Hosp. v. Burwell, 201 F. Supp. 3d 131, 141 (D.D.C. 2016) (holding there is no exhaustion requirement when "neither the Board nor the intermediary has the authority to address challenges to the validity of a regulation"), when the regulation has not even been applied to the case in question, it would not be "futile," see Bethesda 485 U.S. at 404, to await

the Board's determination as to whether the challenged regulation is relevant to the matter at issue.

Accordingly, the Court concludes that it may not exercise subject-matter jurisdiction over this case pursuant to 42 U.S.C. § 1395oo(f).  The Court must therefore turn to the question of whether it has jurisdiction pursuant to the federal mandamus statute.

**B.   Whether the Court has Subject-Matter Jurisdiction Pursuant to the Mandamus Statute**

The plaintiffs alternatively seek to have the Court exercise mandamus jurisdiction, pursuant to 28 U.S.C. § 1361, see Am. Compl. ¶ 2, based on the theory that "the Secretary is not fulfilling the Court's directive on remand but rather has refused to provide additional explanation pursuant to the Court's remand order[,]" Pls.' Opp'n at 21.  The plaintiffs contend that, by requesting that the parties submit briefing as to certain questions on remand, "[t]he [CMS] Administrator has failed to take the actions required by this Court and instead is forcing the parties to go through additional expense and delay in this already long-delayed case."  Id. at 22.  The Secretary counters that "[n]one of the three requirements for mandamus jurisdiction are satisfied."  Def.'s Reply at 8.  According to the Secretary, rather than "seeking enforcement of this Court's mandate, the plaintiffs are effectively asking that it be disregarded."  Id.  Accordingly, the Secretary argues that "the remand process is not yet complete and there is no reason to cut the process short."  Id. at 9.

The remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances."  Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980); see also Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988) ("[T]he writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations.").  Thus, mandamus is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a

clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005) (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)).  Moreover, mandamus is available "only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined.  The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable."  Lozada Colon v. U.S. Dep't of State, 170 F.3d 191, 191 (D.C. Cir. 1999) (internal quotation marks and citation omitted).

The Court must first address whether the plaintiffs have a clear right to relief.  The plaintiffs contend that on remand, "[a] party always has recourse to the court to seek enforcement of its mandate."  Pls.' Opp'n at 20 (quoting Office of Consumers' Couns. State of Ohio v. FERC, 826 F.2d 1136, 1140 (D.C. Cir. 1987)).  It is true that this Court has the power "to correct any misconception of its mandate by a[n] . . . administrative agency subject to its authority."  Office of Consumers' Couns., 826 F.2d at 1140; see also FCC v. Pottsville Broad. Co., 309 U.S. 134, 145 (1940) ("On review the court may [ ] correct errors of law and on remand the [Department] is bound to act upon the correction."); Atlantic City Elec. Co. v. FERC, 329 F.3d 856, 858–57 (D.C. Cir. 2003) (vacating administrative action entirely inconsistent with an initial Court order); N. States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 759 (D.C. Cir. 1997) (granting a writ of mandamus to compel a federal agency to comply with a prior mandate).  The question before the Court, then, is whether the Secretary has failed to comply with the orders of this Court on remand.  In Mercy II, this Court concluded that it

> must . . . remand this case to the agency for the [CMS] Administrator to provide further explanation of the reasons for finding that the plaintiffs' documentation was not contemporaneous . . . Moreover, this case is also remanded for further explanation of the [CMS] Administrator's conclusion that the EDS Reports fail to satisfy the contemporaneous documentation requirement.

410 F. Supp. 3d at 83.  The [CMS] Administrator has since remanded the Court's questions to

the Board.  See Am. Compl. ¶ 151.  Subsequently, the parties were notified that:

> The Board hereby requires the Parties to brief the following consistent [with] the
> Court's decision:
> - Whether or not the Providers billed the state for the claims at issue;
> - Whether or not the Providers' documentation was "contemporaneous" . . .
>   ; and
> - Whether or not the EDS Reports fail to satisfy the "contemporaneous"
>   documentation requirement.

Am. Compl., Ex. B (Notice of Reopening) at 17.  The Board further requested that "the [p]arties'

briefs [ ] address the extent to which the [2020] [f]inal [r]ule is relevant and should be taken into

consideration by the Board when adjudicating these cases."  Id.  Insofar as the Board has simply

requested briefing from the parties on the questions posed to the CMS Administrator on remand,

it has not exceeded or failed to comply with the mandate of this Court.  Accordingly, the

plaintiffs do not have a clear right to relief and issuing a writ of mandamus is therefore not

appropriate.[11]

    The plaintiffs having failed to establish that they have a clear right to relief sufficient to

justify the extraordinary grant of mandamus, the Court concludes that it may not exercise

subject-matter jurisdiction over this action pursuant to the federal mandamus statute.[12]

---

[11] Because all requirements must be established to warrant a writ of mandamus, see In re Medicare Reimbursement
Litig., 414 F.3d at 10, and the Court concludes that the plaintiffs have failed to establish the first of these
requirements, it need not consider whether the remaining two have been satisfied.

[12] It is worth noting that in Mercy II, the Court "decline[d] to exercise its discretion to retain jurisdiction over this
case" given that "the plaintiffs [did] not allege[] that the Secretary engaged in any [ ] unreasonable delay or
noncompliance."  410 F. Supp. 3d at 82.  The Court noted that "the plaintiffs' claims have now been pending for
over ten years" and as such urged the Secretary "to resolve this matter as expeditiously as possible."  Id. at 83.  The
remand order was issued on October 17, 2019, which now was over three years ago.  While the Court does not find
that the Secretary has failed to comply with the remand order at this time, the Court continues to urge the Secretary
to expeditiously resolve this matter.  The plaintiffs' compliance with the Board's requests will hopefully assist in
accomplishing that objective.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the Secretary's motion to dismiss.

**SO ORDERED** this 17th day of November, 2022.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.